IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNIE AYALA,<br><br>    Plaintiff,<br><br>    v.<br><br>TILLERY, et al.,<br><br>    Defendants. | No. 2:20-CV-2014-TLN-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendants' motion to dismiss, ECF No. 16, Plaintiff's opposition, ECF No. 21, and Defendants' reply, ECF No. 25.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

///

///

///

Furthermore, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Finally, "the Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation marks omitted; brackets in original). The rule, however, "applies only to a plaintiff's factual allegations." See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff files suit against the following eight defendants, all employees at Mule Creek State Prison (MCSP): (1) John Artal, correctional officer (CO); (2) Anthony Cribari, CO; (3) Feltner, sergeant, Receiving and Release (R&R); (4) Austin Gaetano, CO; (5) Gann, CO; (6) Jose Salcedo, CO; (7) Tillery, officer, R&R; and (8) Matthew Toles, CO. All are sued in their individual capacities. Plaintiff's allegations are as follows:

At the time of the incident in question, MCSP Facility A was a Level IV-270 maximum security Sensitive Need Yard (SNY). See ECF No. 1, pg. 4. Building 5 was designated Enhanced Outpatient (EOP), and housed inmates experiencing, inter alia, schizophrenia, auditory hallucinations, and homicidal tendencies. See id. It also housed inmates who could not be safely housed in general population (GP) due to other factors (e.g. gang dropouts, informants). See id. At the time of the incident in question, Plaintiff was housed in Building 5 and was designated as Protective Custody (PC) because he is an informant and prison gang drop-out. See id. at 9.

///

///

On October 18, 2019, Facility A was placed on lockdown to search for several pieces of metal which were missing from the facility and which could pose a potential safety and security risk to inmates and employees. See ECF No. 1, pg. 4; see also ECF No. 21, Attachment 1, pg. 13.

On October 25, 2019, Facility A was still operating under lockdown conditions. See ECF No. 1, pg. 4. As part of this lockdown, Warden B. Holmes signed a California Department of Corrections and Rehabilitation (CDCR) 3022 Daily Program Status Report form, notifying staff that all inmate movement would be under escort and that unclothed body searches would be performed prior to escort. See id. at 5. That day, inmate J. Ayala[1] (BJ0361) arrived on a bus from San Quentin Prison. See id. When J. Ayala arrived at R&R, he began to yell, "I am an active gang member do not house me in any of [these] yards I am not a PC, I will get one of [these] motherfuckers." Id. Defendant Tillery placed J. Ayala in a holding cell and did not conduct an unclothed body search. See id. J. Ayala continued yelling while he was in the holding cell that "he was an active gang member and that he was going to get one of [these] motherfucker[s]" if he was placed in the same unit as inmates in protective custody (PC). See id.

Defendants Feltner and Tillery confronted J. Ayala, who was still yelling about "getting" inmates in protective custody, in the holding cell. See id. Defendant Feltner stated, "Stop yelling, I dont [sic] care what you do." Id. Defendant Tillery stated, "If you dont [sic] stop the yelling I will make sure you dont [sic] get your property." Id. at 5-6. Later, Defendant Gann stated, "We dont [sic] care[,] you will be going to A-Facility." Id. at 6. Defendants Feltner, Tillery, and Gann did not conduct an unclothed body search of J. Ayala or place him in the Administrative Segregation Unit (ASU). See id. J. Ayala was cleared for housing in Facility A. See id.

At the time J. Ayala was cleared through R&R, Defendant Salcedo was assigned to the security patrol post. See id. Defendant Salcedo escorted J. Ayala from R&R to Facility A, Building 5. See id. During the escort, J. Ayala continued yelling, "I told them in R&R [sic] and I am saying it now I am not P.C. I dont [sic] belong here I will get one of [these] motherfuckers."

---

[1] Plaintiff Bernie Ayala an inmate and alleged assailant J. Ayala share a surname but are distinct individuals.

1    Id. Defendant Salcedo did not conduct a body search, clothed or unclothed, before escorting J.
2    Ayala into Building 5. See id. He also did not place J. Ayala into a holding cell or report the
3    threats to his supervisors. See id.
4            Defendant Artal was posted as the control booth operator in Building 5 when J.
5    Ayala arrived at the building. See id. at 7. As J. Ayala arrived, he yelled, "I told them in R&R
6    [sic] and I am saying it now I am not P.C. I dont [sic] belong here I will get one of [these]
7    motherfuckers." ECF No. 21, pg. 5. Defendant Artal did not activate his personal alarm, place J.
8    Ayala in handcuffs, report the threats to his supervisors, or ensure that J. Ayala underwent either a
9    clothed or unclothed body search before or upon entering Building 5. See ECF No. 1, pg. 7.
10           Defendant Cribari was posted as security patrol and was standing in front of the
11   entry gate of the rotunda inside of Building 5 as J. Ayala, still yelling threats, entered Building 5.
12   See id. Defendant Cribari did not conduct a clothed or unclothed body search, did not place J.
13   Ayala in handcuffs, and did not report the threats to his supervisor. See id.
14           Defendants Gaetano and Toles were posted as floor officers in Building 5 when J.
15   Ayala arrived while yelling threats. See id. at 8. Neither Defendant Gaetano nor Defendant Toles
16   conducted a clothed or unclothed body search, placed J. Ayala in handcuffs, or reported the
17   threats to their supervisor(s). See id.
18           At around the time J. Ayala arrived at Building 5, Defendant Artal released
19   Plaintiff and several other inmates from their cells, Defendant Toles ordered these inmates to
20   report to the EOP Center for "group," and Defendant Gaetano stated, "Go ahead take it [sic] out."
21   See id. at 9. When released, Plaintiff could hear J. Ayala yelling the threats described previously.
22   See id. None of the inmates released for "group" were subjected to a clothed or unclothed body
23   search. See id. Defendant Artal lined the inmates up in front of the podium near the rotunda gate,
24   but did not open the gate to allow the inmates out. See ECF No. 1, pg. 9; see also ECF No. 21, pg.
25   6. Unspecified Defendants positioned J. Ayala behind Plaintiff while Plaintiff waited to be
26   released. See ECF No. 21, pg. 6. As Plaintiff waited, J. Ayala continued to yell threats toward
27   Plaintiff and other inmates in PC. See id. J. Ayala then pulled out a knife hidden in his waistband
28   and began stabbing Plaintiff, causing "twelve cuts, lacerations, [and] slash[es]." ECF No. 1, pg.

5

10.

Plaintiff also alleges that Defendants as a group have a history of failing to comply with prison policy generally, resulting in regular fights, riots, and assaults between inmates. See id. at 13-14.

## II.  DISCUSSION

The Undersigned recommends denying Defendants' motion to dismiss with regard to Defendants Artal, Feltner, and Gann, and granting Defendants' motion to dismiss, with leave to amend, with regards to the claim of conspiracy and all claims against Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles. Assuming, as required, that every material fact Plaintiff alleges is true, it is plausible – not merely possible – that (1) Plaintiff was incarcerated under conditions presenting a substantial risk of serious harm, and (2) that Defendants Artal, Feltner, and Gann were aware of, but disregarded, this risk. Conversely, construed liberally, Plaintiff's pleadings do not contain factual allegations that make it plausible that Defendants Cribari, Gaetano, Salcedo, Tillery, or Toles recognized that J. Ayala was not properly screened or were paying sufficient attention before the incident to comprehend what J. Ayala was yelling about. Finally, as to the claim of conspiracy, Plaintiff fails to allege sufficient factual matter to raise this claim from entirely speculative to plausible, particularly in light of Plaintiff's allegation of a consistent pattern of CO incompetence and failure to perform jobs properly at the facility. See ECF No. 1, pgs. 13-14.

### A. Causation/Improper "Group" Classification

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations

6

concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

While Plaintiff fails to allege a causal link to several of the named Defendants, Defendants' motion to dismiss, ECF No. 16, characterizes Plaintiff's complaint inaccurately. Defendants contend that Plaintiff is "essentially" suing the named defendants as a group because he "levels virtually the same allegations against all eight Defendants." ECF No. 16, pg. 9. Defendants also argue that Plaintiff's complaint targets these defendants "ostensibly just because they were on duty at the time of the underlying incident." Id. at 4. While it is true that the allegations leveled against Defendants Cribari, Gaetano, and Toles are functionally identical, the same cannot be said for the allegations against Defendants Artal, Feltner, Gann, Salcedo, and Tillery.

While only the allegations against Defendants Artal, Feltner, and Gann state claims upon which relief can be granted, it is patently untrue that Plaintiff's complaint fails to distinguish defendants and that Plaintiff is therefore attempting to sue them as a group solely because they were on duty at the time of the attack.

One example of such distinguishing features can be found in Plaintiff's allegations against Defendant Feltner. Plaintiff alleges that in response to J. Ayala's threats to attack inmates in protective custody, Defendant Feltner told J. Ayala that he did not care what he did. See ECF No. 1, pg. 5. Unlike Defendants Cribari, Gaetano, Toles, Tillery, and Salcedo, Defendant Feltner indicated knowledge of and acknowledged J. Ayala's threats, and specifically indicated that he did not care whether or not J. Ayala followed through on them. See id. While Defendant Tillery also confronted J. Ayala, see id. at 5-6, there are no facts in the record to support an allegation that he gave any attention at all to *what* J. Ayala was actually yelling about. Instead, Plaintiff's complaint indicates that Defendant Tillery was concerned with the yelling's noise, not its content. See id. These allegations, and their significance, are distinct, and Defendants' contention that Plaintiff is improperly suing Defendants as a group is without merit.

Furthermore, the allegations against Defendants Artal, Feltner, and Gann present a clear causal link. Plaintiff's allegations as to each Defendant's knowledge are specific to each individual Defendant, and, as discussed below, it is plausible that each of them knew of a substantial risk of harm but failed to act on that knowledge, allowing Plaintiff to be assaulted under circumstances that made the assault preventable. See generally id. There may also be merit to Plaintiff's allegation that his assault might have been prevented had Defendants Cribari, Gaetano, Salcedo, Tillery, or Toles taken action against J. Ayala, but the possible presence of this causal link does not suggest that these Defendants had the requisite mental state for liability, as discussed below.

### B. Deliberate Indifference/Duty to Protect

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious

8

harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

### 1. MCSP Modified Program

Although Plaintiff dedicates much attention to MCSP's temporary modified security program, and the requirements it imposed on prison employees with regards to conducting unclothed body searches prior to escorting prisoners between facilities, Defendants' failure to adhere to these temporary standards with regard to inmate J. Ayala is irrelevant to Plaintiff's complaint. MCSP's modified security program was initiated on October 18, 2019, to search the facility for the missing items, see ECF No. 21, pg. 13; however, J. Ayala did not arrive at the facility until October 25, 2019, which is also when the incident in question occurred, see ECF No. 1, pg. 5. While Defendants' lack of adherence to proper protocol is cause for concern, Defendants did not have reason to target J. Ayala under these procedures because J. Ayala arrived *after* the potentially dangerous items went missing. As currently alleged, Plaintiff's complaint against Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles is based on their failure to perform *temporary* enhanced security protocols related to dangerous items that went missing several days prior to J. Ayala's arrival. However, the complaint lacks support for the proposition that these employees recognized J. Ayala as anything other than another unruly inmate making empty threats, or as someone who needed to be subjected to temporary security measures related to an item that was lost prior to his arrival, even if such a carveout for new inmates was not part of the guidelines accompanying the temporary procedures.

### 2. Knowledge of Risk

Any omissions committed by Defendants with regard to J. Ayala are significant only to the extent that they were aware of facts from which the inference could be drawn that J. Ayala posed a substantial risk of serious harm, and that Defendants drew that inference. See Farmer, 511 U.S. at 837. Defendants claim the existence of an "obvious alternative explanation that would not result in liability," ECF No. 16, pg. 10, but the alternative explanation that appears to be proposed – that all of the actions or inactions in question are merely the result of negligence, not deliberate indifference – is not "obvious" to this Court. See ECF No. 25, pg. 5. Plaintiff's complaint alleges sufficient facts, taken at face value, to make the existence of such knowledge plausible with regards to Defendants Artal, Feltner, and Gann, but not Defendants Cribari, Gaetano, Salcedo, Tillery, or Toles. Because Plaintiff's claims against Defendants Artal, Feltner, and Gann are plausible on their face, the question of whether or not these prison officials knew of the risk J. Ayala posed may be a question of fact. See Farmer, 511 U.S. at 842. While Defendants correctly note that these claims may raise the "specter of negligence," id., the potential for tort liability does not supplant possible Eighth Amendment liability.

#### a. Defendant Artal

Plaintiff alleges, and Defendants' motion does not dispute, that housing unit control booth operators are instructed not to allow any inmate into the housing unit area without first being properly searched. See ECF No. 1, pg. 10. This appears to be a standard protocol, and not one specifically associated with the temporary modified security program. It is plausible that Defendant Artal knew where he worked, namely a maximum security SNY EOP facility which held inmates with mental conditions including, inter alia, homicidal ideation. See id. at 4. It is, therefore, plausible that Defendant Artal recognized generally that inmates entering this unit, by nature, posed a substantial risk of serious harm. It is also plausible that Defendant Artal knew his basic job duties as control booth operator. It is plausible that a control booth operator would be particularly concerned with any potential threat posed by an inmate being granted access to the housing unit, and thus that Defendant Artal would have heard and comprehended the threats made by J. Ayala, given that the job duties specified that control booth operators were not to permit any

inmate to enter the housing unit without being properly searched. In fact, it is not clear that Defendant Artal had *any* other duties while in that position. However, even if he did not specifically comprehend J. Ayala's threats, it is of no consequence that Defendant Artal may not have perceived him as a specific risk; it is enough that he was aware of the nature of his job and the dangerous attributes of the inmates assigned to this facility, and thus of a substantial risk of serious harm by inmates who are not properly screened. A prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer, 511 U.S. at 843. Despite Defendants' contentions, Plaintiff has alleged specific and sufficient facts warranting relief for a failure-to-protect claim against Defendant Artal. The Undersigned recommends denying Defendants' motion to dismiss the claim against Defendant Artal.

### b. Defendant Feltner

Plaintiff alleges, and Defendants' motion does not dispute, that Defendant Feltner responded to J. Ayala's threats by stating "Stop yelling, I dont [sic] care what you do." ECF No. 1, pg. 5. Defendant Feltner's response, in combination with the previously described knowledge of the nature of the facility in which he worked, renders several things plausible: first, that Defendant Feltner heard J. Ayala yelling; second, that Defendant Feltner understood that J. Ayala was conveying a threat; and third, that Defendant Feltner recognized that J. Ayala presented a substantial risk of serious harm but was consciously indifferent to it. At no time is Defendant Feltner alleged to have told J. Ayala that he did not believe the inmate would carry out his threats; the only reaction Defendant Feltner articulated was indifference. Defendant Feltner cannot reasonably contend that he neither heard nor understood J. Ayala's threats, and it is implausible that he was unaware that he worked in a maximum security SNY EOP facility housing inmates with violent inclinations. Therefore, it is plausible that Defendant Feltner drew the necessary inferences with regard to the threat J. Ayala posed, but was deliberately indifferent to that risk. The Undersigned recommends denying Defendants' motion to dismiss the claim against Defendant Feltner.

c. Defendant Gann

Plaintiff alleges, and Defendants' motion does not dispute, that Defendant Gann responded to J. Ayala's threats by stating, "We dont [sic] care you will be going to A-Facility." ECF No. 1, pg. 6. As with Defendants Artal and Feltner, it is plausible that Defendant Gann was aware of the nature of his workplace, including the threat posed by inmates assigned to such a facility. Defendant Gann, like Defendant Feltner, explicitly acknowledged hearing and comprehending J. Ayala's threats, but expressed indifference; furthermore, as with Defendant Feltner, at no point is Defendant Gann alleged to have indicated that he did not believe J. Ayala's threats to be serious. Therefore, it is plausible that Defendant Feltner drew the necessary inferences with regard to the threat J. Ayala posed, but was deliberately indifferent to that risk. The Undersigned recommends denying Defendants' motion to dismiss the claim against Defendant Gann.

d. Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles

As currently alleged, Plaintiff's complaint against Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles is largely based on their failure to perform *temporary* enhanced security protocols related to dangerous items that went missing several days prior to J. Ayala's arrival. See generally, ECF No. 1. However, the complaint lacks support for the proposition that these employees recognized J. Ayala as anything other than another unruly inmate or as someone who needed to be subjected to temporary security measures related to an item that was lost prior to his arrival, even if such a carveout for new inmates was not part of the guidelines accompanying the temporary procedures.

Furthermore, although Plaintiff alleges, and Defendant's motion does not dispute, that housing unit floor officers are, inter alia, responsible for conducting clothed and unclothed body searches of all inmates entering and exiting the housing unit, see id. at 10, it is not at all clear from Plaintiff's complaint which Defendant or Defendants in particular should have actually searched J. Ayala when he arrived, and it appears implausible that all five of these Defendants were obligated to search J. Ayala individually. It is also unclear as to whether all five of these Defendants are regularly obligated to conduct body searches or whether that duty is part of the

temporary modified security program. Finally, the complaint is unclear as to whether or not any of these Defendants were paying specific attention to J. Ayala or comprehended the threats he was shouting, given that they were responsible for monitoring *all* prisoners in the housing unit and not J. Ayala alone. Therefore, the Undersigned recommends granting Defendants' motion to dismiss the claims against Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles, with leave to amend.

### 3. Sufficiency of Response

Defendants' motion appears to contend that, even if Defendants were aware that J. Ayala was a substantial risk, there is some aspect of Defendants' respective responses to the attack on Plaintiff that might relieve them from liability. See ECF No. 16, pg. 10. However, Defendants' motion suffers from the same deficiency as Plaintiff's complaint, namely, it fails to allege that Defendants responded at all, let alone reasonably. Furthermore, Defendants wrongly conflate "risk" with "event" – that is, a proactive response to a recognized risk versus a reactive response to the predicted danger coming to pass. Farmer, 511 U.S. at 844, speaks of responding reasonably to *risk*, that is, *exposure to danger* - not to the harm itself. Even if Defendants did respond reasonably *after* J. Ayala initiated an attack on Plaintiff, Defendants' motion does not contend that they responded in any way whatsoever to the risk itself, even though it is plausible that they were aware of it. Therefore, even if Defendants did mount a reasonable response once the assault began, such a response would not bar liability for failure to address the risk itself.

### C. Conspiracy

Defendants' contention that Plaintiff's allegation of conspiracy fails to state sufficient facts to support such a claim is correct. To prove a conspiracy, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002). As noted in Defendants' motion, ECF No. 16 at 10, Plaintiff's allegation of a conspiracy describes little more than parallel conduct between prison employees, and certainly does not allege a "meeting of the minds." Instead, Plaintiff merely alleges that none of the Defendants reported any misconduct (e.g., failing to report threats, failing to search J. Ayala). See ECF No. 1, pg. 11. He has submitted no facts to support a finding that any of these actors

acted with each other in a coordinated fashion; mere allegations of parallel dishonesty, while unsettling, do not suggest that the actors specifically planned and coordinated their acts or omissions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007)).

### III.  CONCLUSION

Based on the foregoing, the Undersigned recommends that:

1. Defendants' motion be GRANTED as to Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles, with leave to amend.

2. Defendants' motion be GRANTED as to Plaintiff's claim of conspiracy, with leave to amend.

3. Defendants' motion be DENIED as to Defendants Artal, Feltner, and Gann.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 22, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE