IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNIE AYALA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FELTNER, et al.,<br><br>　　　　Defendants. | No. 2:20-CV-2014-TLN-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendants' motion to dismiss, ECF No. 44, Plaintiff's opposition, ECF No. 47, and Defendants' reply, ECF No. 49.

　　　　In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Furthermore, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

/ / /

/ / /

Finally, "the Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation marks omitted; brackets in original). The rule, however, "applies only to a plaintiff's factual allegations." See Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**I. PROCEDURAL HISTORY**

Plaintiff initiated this action with a complaint naming the following as defendants: (1) John Artal, correctional officer (CO); (2) Anthony Cribari, CO; (3) Feltner, sergeant, Receiving and Release (R&R); (4) Austin Gaetano, CO; (5) Gann, CO; (6) Jose Salcedo, CO; (7) Tillery, officer, R&R; and (8) Matthew Toles, CO. See ECF No. 1, pg. 1. All were sued in their individual capacities. Defendants were served and moved to dismiss the original complaint. See ECF No. 16. Plaintiff opposed Defendants' motion to dismiss, and Defendants replied to the opposition. See ECF No. 21 and 25.

On June 22, 2022, the Court issued findings and recommendations in response to Defendants' motion to dismiss the original complaint. See ECF No. 28. In the findings and recommendations, the Court summarized plaintiff's allegations as follows:

> At the time of the incident in question, MCSP [Mule Creek State Prison] Facility A was a Level IV-270 maximum security Sensitive Need Yard (SNY). See ECF No. 1, pg. 4. Building 5 was designated Enhanced Outpatient (EOP), and housed inmates experiencing, inter alia, schizophrenia, auditory hallucinations, and homicidal tendencies. See id. It also housed inmates who could not be safely housed in general population (GP) due to other factors (e.g. gang dropouts, informants). See id. At the time of the incident in question, Plaintiff was housed in Building 5 and was designated as Protective Custody (PC) because he is an informant and prison gang drop-out. See id. at 9. On October 18, 2019, Facility A was placed on lockdown to search for several pieces of metal which were missing from the facility and which could pose a potential safety and security risk to inmates and employees. See ECF No. 1, pg. 4; see also

ECF No. 21, Attachment 1, pg. 13.

On October 25, 2019, Inmate J. Ayala arrived at R&R. Upon his arrival, he began to yell, "I am an active gang member do not house me in any of [these] yards I am not a PC, I will get one of [these] motherfuckers." Id. Defendant Tillery placed J. Ayala in a holding cell and did not conduct an unclothed body search. See id. J. Ayala continued yelling while he was in the holding cell that "he was an active gang member and that he was going to get one of [these] motherfucker[s]" if he was placed in the same unit as inmates in protective custody (PC). See id. In response, Defendant Tillery stated, "If you dont [sic] stop the yelling I will make sure you dont [sic] get your property." Id. at 5-6.

Later, Defendant Gann stated, "We dont [sic] care[,] you will be going to A-Facility." Id. at 6. Defendants Feltner, Tillery, and Gann did not conduct an unclothed body search of J. Ayala or place him in the Administrative Segregation Unit (ASU). See id. J. Ayala was cleared for housing in Facility A. See id.

At the time J. Ayala was cleared through R&R, Defendant Salcedo was assigned to the security patrol post. See id. Defendant Salcedo escorted J. Ayala from R&R to Facility A, Building 5. See id. During the escort, J. Ayala continued yelling, "I told them in R&R [sic] and I am saying it now I am not P.C. I dont [sic] belong here I will get one of [these] motherfuckers." Id. Defendant Salcedo did not conduct a body search, clothed or unclothed, before escorting J. Ayala into Building 5. See id. He also did not place J. Ayala into a holding cell or report the threats to his supervisors. See id.

Defendant Artal was posted as the control booth operator in Building 5 when J. Ayala arrived at the building. See id. at 7. As J. Ayala arrived, he yelled, "I told them in R&R [sic] and I am saying it now I am not P.C. I dont [sic] belong here I will get one of [these] motherfuckers." ECF No. 21, pg. 5. Defendant Artal did not activate his personal alarm, place J. Ayala in handcuffs, report the threats to his supervisors, or ensure that J. Ayala underwent either a clothed or unclothed body search before or upon entering Building 5. See ECF No. 1, pg. 7.

Defendant Cribari was posted as security patrol and was standing in front of the entry gate of the rotunda inside of Building 5 as J. Ayala, still yelling threats, entered Building 5. See id. Defendant Cribari did not conduct a clothed or unclothed body search, did not place J. Ayala in handcuffs, and did not report the threats to his supervisor. See id.

Defendants Gaetano and Toles were posted as floor officers in Building 5 when J. Ayala arrived while yelling threats. See id. at 8. Neither Defendant Gaetano nor Defendant Toles conducted a clothed or unclothed body search, placed J. Ayala in handcuffs, or reported the threats to their supervisor(s). See id.

At around the time J. Ayala arrived at Building 5, Defendant Artal released Plaintiff and several other inmates from their cells, Defendant Toles ordered these inmates to report to the EOP Center for "group," and Defendant Gaetano stated, "Go ahead take it [sic] out." See id. at 9. When released, Plaintiff could hear J. Ayala yelling the threats described previously. See id. None of the inmates released for "group" were subjected to a clothed or unclothed body search. See id. Defendant Artal lined the inmates up in front of the podium near the rotunda gate, but did not open the gate to allow the inmates out. See ECF No. 1, pg. 9; see also ECF No. 21, pg. 6. Unspecified Defendants positioned J. Ayala behind Plaintiff while Plaintiff waited to be released. See ECF No. 21, pg. 6. As Plaintiff waited, J. Ayala continued to yell threats toward Plaintiff

4

and other inmates in PC. See id. J. Ayala then pulled out a knife hidden in his waistband and began stabbing Plaintiff, causing "twelve cuts, lacerations, [and] slash[es]." ECF No. 1, pg. 10.

Plaintiff also alleges that Defendants as a group have a history of failing to comply with prison policy generally, resulting in regular fights, riots, and assaults between inmates. See id. at 13-14.

ECF No. 28, pgs. 3-6.

The Court recommended that Defendants' motion to dismiss be granted as to Plaintiff's failure-to-protect claim against Defendants Cribari, Gaetano, Salcedo, Tillery, and Toles, with leave to amend; granted as to Plaintiff's claim of conspiracy, with leave to amend; and denied as to Plaintiff's failure-to-protect claim against Defendants Artal, Feltner, and Gann. See ECF No. 28, pg. 14.  On September 30, 2022, the assigned District Judge adopted the June 22, 2022, findings and recommendations in full. See ECF No. 38.

Plaintiff filed his first amended complaint on September 21, 2022. See ECF No. 35. On January 6, 2023, Defendants filed a motion to dismiss Plaintiff's first amended complaint. See ECF No. 44. Plaintiff opposed Defendants' motion to dismiss, and Defendants replied to the opposition. See ECF No. 47, 49. On April 23, 2023, Plaintiff requested to voluntary dismiss all claims against Defendant Tillery. See ECF No. 51.

## II.  PLAINTIFF'S ALLEGATIONS

As with the original complaint, Plaintiff names the following as defendants in the first amended complaint: (1) J. Artal, correctional officer (CO); (2) A. Cribari, CO; (3) Feltner, sergeant, Receiving and Release (R&R); (4) A. Gaetano, CO; (5) Gann, CO; (6) J. Salcedo, CO; (7) Tillery, officer, R&R; and (8) M. Toles, CO. See ECF No. 35, pg. 1.

With respect to Defendants Gann and Feltner, Plaintiff's allegations in the first amended complaint are virtually identical to the allegations in the original complaint. Plaintiff reiterates that Defendants Feltner and Gann did not conduct an unclothed body search of J. Ayala. See ECF No. 35, pg. 4. Further, according to Plaintiff Defendant Feltner responded to J. Ayala's threats by stating "Stop yelling, I dont [sic] care what you do," and Defendant Gann responded "We dont [sic] care you will be going to A-Facility." Id., pg. 4-5.

With respect to Defendant Salcedo, Plaintiff alleges that Defendant J. Feltner summoned Salcedo to pick up inmate J. Ayala and escort him to Facility A. See ECF No. 35, pg. 6. Plaintiff alleges that J. Ayala continued to yell threats against P.C. inmates while Defendant Salcedo escorted him to the plaza gate entrance area of Facility A. See id. According to Plaintiff, Defendant Salcedo is regularly obligated to conduct clothed or unclothed searches of inmates before entering Facility A and the rotunda area of Building 5. See id., pg. 11. Further, Plaintiff alleges that Defendant Salcedo was obligated to activate his alarm and place J. Ayala in restraints immediately after hearing the threats made against P.C. inmates. See id.

Subsequently, despite the continued threats from inmate J. Ayala, Defendant Artal closed the rotunda gate and the building door without performing a clothed or unclothed search. See ECF No. 35, pg. 6. Defendant Artal then released Plaintiff and several other inmates from their cells. See id., pg. 7. Plaintiff contends that as a control booth operator in Building Five, Defendant Artal was obligated to ensure that inmates were subjected to clothed or unclothed searches before he opened the rotunda door. See id., pg. 12. Plaintiff further contends that he was obligated to place J. Ayala in restraints after heading the threats made against P.C. inmates. See id.

Defendant Gaetano then directed Plaintiff and several other inmates to walk out of their cells. See ECF No. 35, pg. 7. Defendant Toles told the Plaintiff and other inmates that they were to "report to the E.O.P center for group." Id. Defendant Cribari ordered the inmates to "line up in front of the podium." Id.  Plaintiff alleges that Defendants Salcedo, Cribari, Gaetano, and Toles allowed inmate J. Ayala to stand behind Plaintiff and the other inmates, despite J. Ayala continuing to yell threats against P.C. inmates. See id. Plaintiff alleges that Defendants Cribari, Gaetano, and Toles were obligated to conduct clothed or unclothed body searches of inmates being released from the rotunda area into the floor area of Building 5. See id., pgs. 12-13. Plaintiff further contends that they were obligated to activate their personal alarms and place inmate J. Ayala in restrains after hearing the threats made against P.C. inmates. See id.

/ / /

/ / /

6

1         Plaintiff and the other inmates were lined up in front of the podium with inmate J. Ayala behind them for approximately seven minutes. See ECF No. 35, pg. 7. Plaintiff states that Defendants Artal, Salcedo, Cribari, Gaetano, and Toles failed to open the rotunda door to allow Plaintiff and other inmates to exit the housing unit. See id. As Plaintiff waited, J. Ayala pulled out a knife hidden in his waistband and stabbed Plaintiff twelve times. See id., pgs. 7-8.

        Plaintiff cites a host of CDCR policies, procedures, and post orders that he alleges Defendants are obligated to comply with on a regular basis. See ECF No. 35, pgs. 8-14. Plaintiff contends that Defendants failed to comply with a temporary order signed by MCSP Chief Deputy Warden B. Holmes, requiring that all inmate movement be conducted under escort and that an unclothed body search shall be conducted prior to escort. See id., pg. 13. Plaintiff states that the temporary order was still in effect on October 25, 2019, the date of the assault. See id.

        Plaintiff also claims that after the incident, all Defendants "acted in concert to cover up their misconduct." See ECF No. 35, pg. 14. Plaintiff alleges that Defendants failed to report the threats made by J. Ayala and failed to report that they did not conduct a clothed or unclothed body search of J. Ayala before escorting him to Building Five. See id.

### III. DISCUSSION

        In their motion to dismiss the first amended complaint, Defendants argue that Plaintiff fails to plead sufficient facts to sustain claims based on either failure to protect or conspiracy. With respect to the failure-to-protect claims, the undersigned recommends denying Defendants' motion to dismiss as to Defendants Artal, Feltner, and Gann, and granting Defendants' motion to dismiss, with leave to amend, as to Defendants Cribari, Gaetano, Salcedo, and Toles. As to the conspiracy claim, the undersigned recommends granting Defendants' motion to dismiss, with leave to amend.

/ / /
/ / /
/ / /
/ / /

7

A. **Failure-to-Protect Claims**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See

Farmer, 511 U.S. at 844.

### 1. Defendant Artal

Defendants argue that Plaintiff fails to raise a plausible claim for relief against Defendant Artal in his first amended complaint. According to Defendants:

> . . .[N]either the complaint nor FAC alleges any facts making it plausible that Defendant Artal could or should have known that J. Ayala was not properly searched, and it is certainly implausible that the control booth operator was responsible for searching J. Ayala. Nor does the FAC allege facts supporting the proposition the Defendant Artal comprehended the threats J. Ayala was making, recognized J. Ayala as anything other than another unruly inmate, etc.

ECF No. 44, pg. 14.

The Court is unpersuaded by this argument. In the June 20, 2022, findings and recommendations, the Court concluded that Plaintiff's original complaint alleged specific and sufficient facts warranting relief for a failure-to-protect claim against Defendant Artal. See ECF No. 38, pg. 11. In their motion to dismiss, Defendants themselves contend that "for the most part …the charging allegations in Plaintiff's FAC are virtually identical to those made in Plaintiff's complaint…." See ECF No. 44, pg. 12. In his first amended complaint, Plaintiff contends that as a control booth operator in Building Five, Defendant Artal was obligated to ensure that inmates were subjected to clothed and/or unclothed searches before he opened the rotunda door. See ECF No. 35, pg. 12. Plaintiff further contends that Defendant Artal was obligated to place inmate J. Ayala in restraints after hearing the threats made against P.C. inmates. See id. It is, therefore, plausible that Defendant Artal was aware of the nature of his job and the dangerous attributes of the inmates assigned to this facility, and thus of a substantial risk of serious harm by inmates who are not properly screened.  As such, the undersigned recommends denying Defendants' motion to dismiss the claim against Defendant Artal.

### 2. Defendants Feltner and Gann

Defendants contend that because Plaintiff was locked in his cell at the time when J. Ayala was being processed through R&R, Plaintiff could not have known what did or did not occur while J. Ayala was in R&R. See ECF No. 44, pgs. 14-15. Accordingly, Defendants argue that Plaintiff must plead some basis for the allegations against Defendants Feltner and Gann to

9

state a plausible claim for relief. See id., pg. 15. In opposition to Defendant's motion to dismiss, Plaintiff submitted written declarations from two witnesses. See ECF No. 47. In their reply, the Defendants contend that the Court must limit its review to the four corners of the operative complaint and disregard the subject declarations.

When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'" See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (quoting Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993)); see also Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted). As such, the Court will only consider whether Plaintiff's claims are sufficient based upon the allegations set forth in the first amended complaint and not newly alleged facts presented in Plaintiff's opposition brief.

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). The Ninth Circuit has held that the "plausibility standard...does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Park v. Thompson, 851 F.3d 910, 928–29 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010))." Unless the factual allegations as a whole, whether pled without limitation or "on information and belief," demonstrate a plausible claim, the discovery process for that claim will not be opened. Id.

The mere fact that Plaintiff's first amended complaint contains allegations that are "based upon information and belief" does not, in itself, mean that Plaintiff has failed to state a claim against Defendants. See Gonzalez v. Cnty. of Merced, 2017 WL 2345681 (E.D. Cal. 2017). Plaintiff's allegations in the original complaint are virtually identical to the allegations in the first amended complaint. Plaintiff alleges, and Defendants' motion does not dispute, that Defendant Feltner responded to J. Ayala's threats by stating "Stop yelling, I dont [sic] care what you do" and

Defendant Gann responded with "We dont [sic] care you will be going to A-Facility." See ECF No. 35, pgs. 4-5. These responses, in combination with Defendants' knowledge of the nature of the facility in which they worked, renders several things plausible: first, that Defendant Feltner and Gann heard J. Ayala yelling; second, that Defendant Feltner and Gann understood that J. Ayala was conveying a threat; and third, that Defendant Feltner and Gann recognized that J. Ayala presented a substantial risk of serious harm but was consciously indifferent to it. Accordingly, the undersigned recommends denying Defendants' motion to dismiss the claims against Defendants Feltner and Gann.

### 3. Defendants Cribari, Gaetano, Salcedo, and Toles

With respect to Defendants Cribari, Gaetano, Salcedo, and Toles, Defendants argue that the Court should dismiss the claims set forth in Plaintiff's First Amended Complaint (FAC) because Plaintiff failed to cure the deficiencies noted in the June 22, 2022, findings and recommendations. According to Defendants:

> . . .Compelling questions remain as to whether these Defendants: (1) recognized J. Ayala as anything other than another unruly inmate making empty threats; (2) were paying specific attention to J. Ayala or comprehended the threats he was shouting given their responsibility to monitor all prisoners; and (3) which Defendant or Defendants in particular should have actually searched J. Ayala, etc.

ECF No. 44, pg. 14.

The Court agrees that Plaintiff's first amended complaint does not contain sufficient factual allegations that make it plausible that Defendants Cribari, Gaetano, Salcedo, or Toles knew of and disregarded a substantial risk of harm. Similar to Plaintiff's original complaint, nothing in Plaintiff's first amended complaint suggests that the above defendants recognized that inmate J. Ayala presented a specific threat of harm, and therefore, needed to be subjected to a body search or other security measures. Further, while Plaintiff contends that all officers were regularly obligated to perform body searches on inmates entering the Housing Facility, it remains unclear from Plaintiff's first amended complaint which Defendant or Defendants in particular should have actually searched inmate J. Ayala when he arrived at the Facility. It remains implausible that all Defendants were expected to perform a clothed or unclothed body search of

inmate J. Ayala, especially given that inmate Ayala already went through the screening process, and Defendants were responsible for monitoring all prisoners in the housing unit and not J. Ayala alone individually. While Plaintiff states that J. Ayala continued yelling threats once in the Housing Facility, Plaintiff fails to allege facts suggesting that Defendants comprehended the threats inmate J. Ayala was shouting. See ECF No. 35, pg. 6.

Accordingly, the undersigned recommends granting Defendants' motion to dismiss the claims against Defendants Cribari, Gaetano, Salcedo, and Toles. Given the possibility that Plaintiff can bolster his claim with facts newly alleged in the opposition brief, the Court will also recommend that Plaintiff be provided a further opportunity to amend.

### B. Conspiracy Claim

Defendants' contention that Plaintiff's first amended complaint fails to state sufficient facts to support a conspiracy claim is correct. To prove a conspiracy, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002). As noted in Defendants' motion, ECF No. 44, the allegations supporting Plaintiff's claims in the first amended complaint are identical to those in the original complaint. Plaintiff has submitted no facts to support a finding that any of the defendants acted with each other in a coordinated fashion. Mere allegations of parallel dishonesty, while unsettling, do not suggest that the actors specifically planned and coordinated their acts or omissions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007)). Therefore, the Undersigned recommends granting Defendants' motion to dismiss on the conspiracy claim, with leave to amend.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendants' motion to dismiss, ECF No. 44, be DENIED as to Defendants Artal, Feltner, and Gann.

2. Defendants' motion to dismiss, ECF No. 44, be GRANTED as to Defendants Cribari, Gaetano, Salcedo, and Toles.

       3.       Defendants' motion to dismiss, ECF No. 44, be GRANTED as to Plaintiff's claim of conspiracy.

       4.       Plaintiff be provided an opportunity to file a second amended complaint or proceed on the first amended complaint on his failure-to-protect claims against Defendants Artal, Feltner, and Gann only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 12, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13